The opinion and decree heretofore handed down herein are reinstated and made the judgment of this court.

———

(87 South. 742)

No. 23297.

CROOM et al. v. THOMPSON'S HEIRS.

(Nov. 3, 1920. Rehearing Granted Feb. 28, 1921.)

(*Syllabus by the Court.*)

On Rehearing.

Taxation ⚖══809(2)—Tax deed not confirmed where deed annexed to application for confirmation shows sale to another not in conformity with statute.

Where plaintiffs in a suit for confirmation of title allege that they inherited from their father, as purchaser at the tax sale, but the deed, annexed to and made part of their petition, shows a sale to another person, and also shows that it was not made in conformity to the statute relied on as authorizing it, their demands must be rejected.

Monroe, C. J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Suit by C. B. Croom and others against the Heirs of Joseph Thompson. Judgment for plaintiffs, and defendants appeal. Affirmed on rehearing.

J. J. McLoughlin and Wm. Winans Wall, both of New Orleans, for appellants.

Otis W. Bullock, of Shreveport, for appellees.

MONROE, C. J. (original opinion changed to dissent by result on rehearing). This is a suit by five of the (six) children and heirs of Calvin S. Croom and Margaret A. Croom, his wife, to confirm a tax title, as inherited from their parents, to the N. W. ¼ of section 14, N. E. ¼ of section 15, and E. ½ of S. E. ¼ of section 10, in township 19 northwest, range 16 W., parish of Caddo.

The district court gave judgment for plaintiffs, confirming their title to an undivided five-sixths of one-half of the tracts so described, and defendants have appealed.

The original petition, filed December 8, 1916, alleges that the land in question was sold on September 19, 1881, for unpaid taxes due thereon for the years 1873, 1874, 1875, 1876, 1877, and 1878, and was acquired by petitioner's father, Calvin S. Croom, "as shown by deed, * * * a certified copy of which is attached to and made part hereof"; that petitioners and M. H. B. Croom, deceased, inherited an undivided one-half interest in said property from Calvin S. Croom, their father, and the remaining half interest from Margaret A. Croom, their mother, it belonging to the community of acquets and gains existing between their ancestors; that Joseph Thompson and James F. Utz, were the owners of record at that time, but that the land was assessed and the sale made in the name of Samuel Thompson; that Joseph Thompson and James F. Utz had acquired their titles from Joseph B. Thompson, who had acquired from the United States government; that Joseph Thompson being a nonresident, a curator ad hoc should be appointed to represent him. The certified copy of the tax deed, made part of the petition, contains the recitals that the sale is made to "C. B. Croom"; that the property was advertised, from May 18 to June 18, 1881, to be sold for the taxes, due thereon by Samuel Thompson, for the years 1873, 1874, 1875, 1876, 1877, and 1878; that the collector proceeded to offer the property for said taxes, penalties, and costs; that, failing to receive a bid to the amount thereof, he readvertised said property from August 15 to September 14, to be sold on September 17, for cash, to the highest bidder; and that, said Croom (C. B. Croom) being the highest bidder, it was awarded to him, for $7; and that the transfer of title was made by virtue of Act 77 of 1880.

The curator ad hoc, having been appointed to represent Joseph Thompson, filed an exception of no cause of action. By supplemental petition (January 27, 1917) plaintiffs allege that Joseph Thompson "departed this life many years ago, leaving Josephine Thompson (now Mrs. Hardin) and Samuel M. Thompson issue of his marriage as his sole heirs"; that Samuel M. Thompson has also departed this life, leaving a widow, children, and minor grandchildren in other states, and for whom the appointments of a curator ad hoc and tutor ad hoc were asked and made.

An answer was then filed (February 14, 1917) on behalf of all the defendants, appearing by curator ad hoc and attorney, except the minors, who appeared by the tutor ad hoc so appointed, which answer was followed by an exception of no cause or right of action (filed February 17, 1917), on behalf of Mrs. Hardin, and a similar exception (on March 21, 1917) specifying, as the ground thereof, that the tax deed, made part of the petition, contains the recital that it was made under the authority of Act 77 of 1880; that said act, being a revenue statute, conveys no such authority, and that the deed is therefore void on its face; and thereafter, on March 26, 1917, plaintiff pleaded the prescription of 10 days and 3 and 5 years. On June 2, 1917, Mrs. Hardin filed another answer and a claim in reconvention, which was followed on June 27, 1917, by a similar answer and claim on behalf of the other defendants; and on July 27, 1918, plaintiffs filed another supplemental petition, in which they allege that the property in question was "forfeited" to the state for the unpaid taxes of 1873, 1874, 1875, 1876, 1877, and 1878, and on September 19, 1881, was sold for said unpaid taxes "in accordance with the laws of Louisiana then in force and effect, and authorizing such sale"; that Calvin S. Croom, father of petitioners, acquired the same at said sale; that petitioners and W. H. B. Croom, deceased, inherited an undivided one-half interest in said property from Calvin S. Croom, their father, and the remaining half interest from Margaret A. Croom, their mother.

The facts admitted, or as they otherwise appear to us from the record, are as follows:

In 1839, Joseph B. Thompson bought a body of land aggregating 1,400 acres, more or less, upon which he established his residence, and which thereafter constituted a unit known as the "Thompson Place," upon which he continued to live, and eventually died, in his residence thereon, in 1883. In 1848 he sold an undivided half interest in the tracts here in dispute (which formed part of the Thompson place, but not that part upon which the residence stood), to his son, Joseph Thompson, who died in 1849; and in 1873 he sold the remaining half interest in said tracts (with some other land) to his son-in-law, James F. Utz, who died, probably in 1895, and whose succession was opened in that year by his widow in community as such, and as natural tutrix of their minor children, and his interest in said tracts was inventoried as the property of the succession. It is not shown or pretended that either Joseph Thompson or James F. Utz, or their heirs, have ever voluntarily alienated the interest so acquired by them in the tracts here in question; nor, on the other hand, has it been alleged or shown that they ever, during the life of Joseph B. Thompson, demanded delivery, or took actual possession or disturbed their vendor's possession, of said tracts.

There is testimony to the effect that after the death of Joseph B. Thompson the Thompson place, including the tracts in dispute, was considered to be under the administration of Utz, and after his death (say, in 1895) under the administration of his widow as such and

as tutrix; and there is some vague testimony about negro tenants, supposed to be holding under "Captain" or Mrs. Utz, and quite positive testimony by J. S. Noel to the effect that he collected and paid over to Mrs. Utz moneys derived from sales of cross-tie timber cuts on the land. C. B. Croom (plaintiff herein) testifies that he lived in the neighborhood until he was about 25 years old, and left there in 1883; that when he left no one was living on the land, though whether he means the Thompson place or the 400 acres in dispute, as distinguished therefrom, we are unable to say. Certain it is that Joseph B. Thompson died in his residence on the Thompson place in 1883. The witness further testifies that after his return to that section, in, say, 1909, he gave Dr. Tillinghast, who lived on adjoining land, but who has since died, permission to cultivate as much as he pleased of the land claimed to be the Samuel Thompson land, and that Tillinghast cultivated 10 or 15 acres. Wilder, son-in-law of Captain and Mrs. Utz, testifies that Tillinghast was already cultivating the land by permission of Mrs. Utz, and that such permission was renewed by the witness to Tillinghast's son.

The land is, however, so poor as to be hardly worth cultivating, and would not excite the interest here displayed but for the possibility of its bearing oil or gas. In November, 1917 (during one of the intervals between the filing of plaintiff's supplemental petitions), defendants, though denying that the land in dispute had been forfeited to the state, paid the taxes, with interest, penalties, etc., assessed for the years 1873 to 1878, inclusive, and received certificates of redemption from the state auditor. As we read the testimony, the whole of the tracts herein claimed were assessed for those years to "Samuel Thompson, R. T. Noel, Agt.," and for some, and, perhaps all, of those years, some, and perhaps all, of the tracts were also assessed to James F. Utz and the taxes were paid by him.

## Opinion.

1. As will be seen from the foregoing statement, plaintiffs claim title by inheritance from Calvin S. Croom and wife, their parents, alleging that Calvin S. Croom acquired the land, as shown by the tax deed, annexed to and made part of their petition, and that it fell into the community. The deed, however, shows that the tax sale was made to C. B. Croom, and, as no other evidence connects plaintiffs with the tax sale, it follows that their allegation of title is not only not sustained, but is shown to have been made in error. Nor is the situation improved by the facts that one of the plaintiffs is named C. B. Croom, and that it is admitted that they are all children and heirs of Calvin S. Croom and wife, since C. B. Croom, plaintiff, is not identified as the C. B. Croom to whom the land was sold.

2. As will be seen, also the first petition alleges that the sale on which plaintiffs rely was made by authority of Act 77 of 1880, whereas that act purports to provide a revenue for the state for the year 1880 and succeeding years, and the means for enforcing its collection, and furnishes no authority for the sale of property forfeited to, or otherwise acquired by, the state by reason of the nonpayment of taxes previously levied. It is then alleged, by supplemental petition (filed more than a year later), that the property in question had been forfeited to the state for unpaid taxes, assessed for certain years prior to 1879, and had been "sold" * * * for the unpaid taxes thereon for said years in accordance with the laws of Louisiana then in force and effect and authorizing such sale; that "Calvin S. Croom, father of your petitioners, acquired the same at said sale, as shown by deed," etc.; and, though defendants had come into court upon the issue of

the validity of the sale as made by authority of act 77 of 1880, they were invited to come in again upon the question, of the validity of the sale as tested by any law then in force; and at some time thereafter (in the argument, presumably) plaintiffs invoked Act 107 of 1880. But that statute required that the property to be sold under its authority should be first offered on the first Saturday in March of each year, and, on failure to bring the required amount, should then be offered and sold for what it might bring on the first Saturday in April, whereas the property here in question appears to have been first offered on the 18th of June, and then offered and sold on the 17th of September, so that the sale cannot be said to have been made in accordance with, or under the authority of Act 107 of 1880, and we are referred to no other statute as conferring such authority.

The ordinance immediately following article 268 of the Constitution of 1879 required that, in the event the principal of the taxes due on property forfeited to or acquired by the state prior to January 1, 1879, should not be paid, with interest, penalties, etc., prior to January 1, 1881, it should "then be sold, in the manner to be provided by law," and Act 107 of 1880 was no doubt intended to make the provision thus referred to; but the sale here in question was not made in accordance with that provision.

Beyond what has been thus said, the case presents the questions, arising from the facts, that Joseph B. Thompson was living on the Thompson place, which had originally included the tracts here in question, at the date of the alleged tax sale, and continued so to live until his death 2 years later, and from the law, which declares, in effect, that in the event of the nondelivery of the thing sold the seller holds possession for the buyer (C. C. arts. 2468, 2469), and that at his death his rights and obligations are transmitted to his heirs, and the further question that, during the years for the taxes of which said tracts are said to have been forfeited to the state, they were assessed, in toto, to "Thompson, Samuel, R. T. Noel, Agt.," and were also assessed in whole or in part to James F. Utz, by whom the taxes so assessed were paid.

But we do not feel called upon to decide those questions, or others which are discussed in the briefs, since, however broad may be the application of article 233 of the Constitution and of the enabling statutes relating thereto, we can find no basis upon which to rest a judgment holding that either the Constitution or the statutes can be successfully invoked in support of an unauthorized tax sale, set up as a muniment of title, by persons who disclose no connection with such title or legal interest therein.

In giving judgment for plaintiff with respect to five-sixths of one-half of the land in question, the judge a quo rejected their claim to the undivided half which had been sold to James F. Utz, whose legal representatives were not sued and made no appearance. As to the other half, since plaintiffs claim title, as inherited from Calvin S. Croom and wife, their parents, and support their claim by the unauthorized tax deed to C. B. Croom, who is not identified as the Croom who participates in this suit, that claim should also have been rejected.

It is therefore ordered and decreed that the judgment appealed from be annulled; that plaintiffs' demands be rejected; and this suit dismissed at their cost in both courts, with reservation of whatever rights they may have to the reimbursement of taxes paid upon the land which is the subject of this controversy.

PROVOSTY, J., concurs in the decree only.

O'NIELL, J., dissents.

### On Rehearing.

PROVOSTY, J. By a tax collector's deed in favor of their deceased father, whose sole heirs they are, the plaintiffs claim to own a tract of land of 400 acres situated in the parish of Caddo, and described as N. W. ¼ of section 14, N. E. ¼ of section 15, and E. ½ of S. E. ¼ of section 10, township 19 north, range 6 west.

They ask that their tax title be confirmed as to the interest which Joseph Thompson once owned in this land, an undivided half.

This 400 acres originally formed a part of a tract of 1,400 acres which Joseph B. Thompson acquired from the government. In 1848 he sold an undivided half of this 400 acres to Joseph Thompson, and in 1873 sold his remaining interest in the 1,400 acres to his son-in-law, James F. Utz. Joseph Thompson died, and left as his heirs his two children, Samuel Thompson and Mrs. Hardin. The latter and the heirs of Samuel Thompson are made defendants. These heirs are represented by a curator ad hoc; they being non-residents.

In the years 1873, 1874, 1875, 1876, 1877, and 1878, this 400 acres was assessed in its entirety to Samuel Thompson; and it figures on the delinquent lists of these years. These lists were regularly filed and recorded each year in the offices of the recorder of mortgages of the parish of Caddo and the state auditor.

Section 68 of Act 42, p. 122, of 1871, which was the general revenue law in force until the enactment of Act 96, p. 136, Extra Sess., 1877, provided that—

"The said delinquent lists * * * when so filed in the office of the auditor of public accounts, shall be entered by him on a record kept for that purpose, and shall vest, from the day of filing, a title to the lands * * * therein returned, in the state of Louisiana, which shall be impeachable only on proof that taxes for nonpayment whereof the lands were returned forfeited had been in fact paid to the collector before the return of the lists to the recorder."

In these delinquent lists this 400-acre tract is described as "Not cultivated."

The tax collector's deed to the father of plaintiffs was made in September, 1881. It recites that this 400 acres, "being the same property assessed to Samuel Thompson upon the tableau of taxes of the years 1873, 1874, 1875, 1876, 1877 and 1878," was advertised to be sold to the highest bidder, and that, no bid equal to the amount of the taxes, penalties, and costs due on it having been made, it was readvertised to be sold to the highest bidder, and was adjudicated at this second offering to C. B. Croom for $7, he being the highest bidder. It recites, further, that by virtue of Act 77 of 1880 the tax collector transferred the property to Croom.

The taxes, penalties, and costs amounted to many times over this $7, and the tax collector would have been utterly without authority to make the said adjudication under said Act 77 of 1880 (The General Revenue Law of that year). He did, however, have authority to make it, precisely in the manner he made it, under Act 107 of that year, which provided for the sale at public auction of all property theretofore acquired by the state for delinquent taxes. The latter act provided that if at the first offering no bid equal to the amount of the taxes, penalties, and costs due on the property was made, the tax collector should readvertise, and adjudicate to the highest bidder for whatever amount might be bid. Under Act 77 of 1880, the tax collector could have offered for sale only the least quantity of the property any bidder would take and pay the taxes, penalties, and costs due on the entire property. Under these circumstances we must conclude that this sale to the father of plaintiffs was in reality made under Act 107 of 1880, and that the reference to Act 77 of that year was simply an error.

No law required the tax collector to make mention in his deed of the statute under or

by virtue of which the sale was made. This mention of Act 77 of 1880 may therefore be regarded as mere surplusage. "Utile per inutile non vitiatur." But if it were otherwise, and the deed was irregular, and even fatally defective, this would be a matter concerning only the state, in which defendants could have no interest, their sole interest being in the question of whether the property was validly sold or forfeited to the state. Morrison v. Larkin, 26 La. Ann. 699; George v. Cole, 109 La. 823, 33 South. 784; Quaker Realty Co. v. La Basse, 131 La. 996,.60 South. 661, Ann. Cas. 1914A, 1073, and other cases.

Against all attacks upon forfeiture to the state the plaintiffs oppose the prescription of 3 years provided for by article 233 of the Constitution and other prescriptions.

Defendants contend that this prescription is inapplicable to tax forfeitures, but only to tax sales, and as a matter of fact the Constitution does mention only sales. It reads:

"No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale," etc.

And it is true also that in our tax legislation tax sales are always referred to as sales, and forfeitures as forfeitures, thereby apparently establishing a legal distinction between them. But we are clear that this distinction is one merely in nomenclature, or form, not in matter of substance, and that the meaning of said constitutional provision is that tax titles shall not be set aside, except in the cases specified. Of course, the situation would be wholly different if, as ordinarily is the case, the so-called forfeiture did not have the effect of completely transferring the title; but, as seen from the Act of 1871 hereinabove quoted, the so-called forfeiture in this case had that effect completely, the only difference between the two modes of transferring the title being that if at the auction crying there was a sufficient bid, a deed would be made to the bidder, and if there was not the delinquent list would be filed of record in the offices of the recorder of mortgages and state auditor, and be recorded in a book to be kept for that purpose in the latter office, to stand in lieu of a regular deed. It will be noted that this recordation could be thus made and the title to the property thereby vested in the state only after the property had been regularly offered for sale and no sufficient bid made upon it by some private individual; so that such recordation had to be preceded by observance of the same forms, so far as notice to the taxpayer, advertisement, etc., were concerned, as in the case of a deed to a private individual.

In Surget v. Newman, 43 La. Ann. 878, 9 South. 561, this court said:

"The forfeiture of the property to the state was in effect a deed to the state, and vested in the state title to the land"—citing the hereinabove quoted Act 42 of 1871, which expressly so provides.

In Quaker Realty Co. v. Citizens' Bank, 131 La. 846, 60 South. 367, a most closely contested and elaborately considered case, the said prescription was applied to a forfeiture.

Defendants next contend that the said prescription is inapplicable for the reason that the property was assessed to James F. Utz, and the taxes paid by him.

But the learned trial judge found differently, and so do we. The descriptions in the Utz assessments were invariably preceded by the figures, "½," which, while not very explicit—descriptions in assessments never are —could only mean that what was being assessed to Utz was an undivided half, the interest he owned.

It will be noted that plaintiffs are not asking confirmation of the tax title as to this undivided half of Utz, but only as to the undivided half of Samuel Thompson and Mrs. Hardin upon which no taxes were paid.

Finally, defendants contend that the prescription does not apply because the tax debtors continued in possession of the property.

The testimony as to possession is vague, conflicting, and unsatisfactory. Joseph Thompson lived in Alabama, and never took possession. Joseph B. Thompson did not live on this 400-acre tract. Whether any part of the land cultivated extended into this 400-acre tract is left in doubt by the testimony. He died in 1883. The assessments recite that the land was "uncultivated." Whatever cultivation there was, was by negro tenants. The land was very poor. "Would hardly grow peas," one of the witnesses says. Inasmuch as some of the witnesses refer to a part of the 400 acres as being an old field which remained unfenced for years and on which large trees had grown; part of it must have been in cultivation at one time. At some time before the trial of this case (date not fixed) a Dr. Tillinghast, owner of an adjoining plantation, extended his field fence so as to take in some 10 to 15 acres of this old field. By whose permission he did this is testified to by one of the plaintiffs, C. B. Croom, who says it was by his permission; and by a Mr. Elder, a son-in-law and agent of Mrs. Utz, who says he "believes" it was by the permission of Mrs. Utz. The learned trial judge found that no one had been in possession of the land in dispute. And our own conclusion is that there is no positive evidence of any one having been in possession of it from the time the open part of it became an old field until Dr. Tillinghast fenced in the few acres of it as above stated, and that this absence of possession was for many years both before and after the sale of it to the father of plaintiffs.

Inasmuch as the said prescription applies to all tax sales in the absence of proof of the tax debtor having continued in actual possession, the burden rests upon the tax debtor to make proof of this continued possession. This burden the defendants have not discharged.

In their behalf it is argued that Joseph B. Thompson had possession until his death, and that thereafter James F. Utz, and after his death his widow had possession, and that their possession as part owners must be held to have been both for themselves and their co-owners.

There is no evidence whatever that the Utzes ever held otherwise than for themselves, and the evidence of their possession of the adjoining land having extended into this 400 acres is contradicted and is more than doubtful. If they ever received a cent of rent for any part of the 400 acres in dispute, the evidence does not show it, and still less does it show that they accounted to their co-owners for any rent they received. In arguing, therefore, that the possession which Joseph B. Thompson had, and after him the Utzes, must be held to have been for their co-owners as to the interest of the latter, the reliance of the learned counsel must be solely upon the hypothesis that the possession of a co-owner in indivision has to be presumed to be for all the co-owners. But if as to those of the co-owners who are not in actual possession the possession thus adheres to and follows the title, it must in like manner do so into whatever hands the title may pass; and, as a consequence, this possession by the Utzes was for the tax debtors only so long as the latter retained the title, and it passed to the state the moment the title passed to the state.

We may add that we do not wish to be understood as holding, or even intimating, that a mere fictive or presumptive possession such as this can serve to arrest the course of this constitutional prescription, which, as is well known, was designed to be drastic and sweeping.

We deem it unnecessary to mention the

nullities contended for by defendants, since admittedly they are all cured by the said constitutional prescription if said prescription be applicable, as we hold it to be; and one reason for judgment being sufficient if good, we, in like manner, deem it unnecessary to discuss the other prescriptions pleaded by plaintiffs.

The judgment below went for plaintiffs.

Judgment affirmed.

MONROE, C. J., dissents for reasons assigned in original opinion.

O'NIELL, J., concurs in the decree.