175 So. 448

**CAUSEY v. OPELOUSAS–ST. LANDRY
SECURITIES CO., Inc.**

No. 34264.

May 24, 1937.

Rehearing Denied June 21, 1937.

Dubuisson & Dubuisson, of Opelousas, for appellant.

O. E. Guillory, of Ville Platte, for appellee.

FOURNET, Justice.

Two petitory actions were instituted by Truman M. Causey against the Opelousas-St. Landry Securities Co., Inc., one as curator of the vacant succession of William Shields to recover section 40, township 2 south, range 1 east, containing 320.77 acres, and the other as curator of the vacant succession of Robert Rogers and Caroline Z. Hudson to recover section 41, township 2 south, range 1 east, containing 321.11 acres. Each suit is coupled with an action of nullity to set aside the sheriff's sale to Samuel Haas of the respective properties, executed on June 30, 1881, and subsequent mesne conveyances thereof by his heirs and assigns, and also for damages in the sum of $3,338.00 for the price of a portion of the property and timber sold therefrom.

The facts of the case are that William Shields acquired section 40 and Robert Rogers acquired section 41, both situated in township 2 south, range 1 east, by Spanish grants from the United States government, as appears by Commissioner's Reports B–986 and B2–987, respectively, American State Papers, volume 2, page 830, dated June 28, 1811. William Shields died about the year 1812 and Robert Rogers about the year 1822 and neither left any known heirs. Robert Rogers' succession was never opened to probate, but it appears that the succession of William Shields was opened to administration in the year of his death. However, the property in controversy was not included in the inventory taken of his property

and the record does not show that the succession was ever closed.

The two sections of land were placed on the assessment rolls of St. Landry parish for the year 1876 in the names of the respective original owners, and on May 10, 1881, the property was adjudicated to Samuel Haas for the price and consideration of $1 and costs, under the express provisions of section 3 of Act No. 107 of 1880, and the sheriff formally executed deeds to him for the respective properties on June 30, 1881, by authentic acts but *without warranty of title*. On September 22, 1905, Samuel Haas, by notarial act, executed a credit sale of the two sections of land to James W. Russel, *without warranty of title,* but after the death of Samuel Haas, James W. Russel, on May 8, 1925, executed an act of retrocession of the property for the unpaid purchase price thereof to Leon S. Haas for the benefit of all the heirs of Samual Haas. On October 20, 1932, the Opelousas-St. Landry Securities Co., Inc., acquired the undivided interest in and to the property belonging to Leon S. Haas and acquired the remainder of the property from the heirs of Samuel Haas by act passed before Seth Lewis, notary public, on October 7, 1933. Subsequent to its acquisition of the property, defendant made transfers: (1) On September 12, 1934, of all the merchantable pine timber standing and down on both sections, to G. J. Deville Lumber Co., Inc., for the sum of $1,750; (2) on June 4, 1936, of certain timber on the entire property to the Southern Advance Bag & Paper Company, for the price of $1,500; (3) on September 10, 1935, of one-half acre of the land to Turkey Creek Church of Christ, for a consideration of $25; (4) on September 9, 1934, of 2.32 acres to W. D. Rayford, for a consideration of $63; and (5) of 2.50 acres to Odelle E. Deville.

On June 17, 1936, the succession of William Shields and on July 10, 1936, the succession of Robert Rogers and Caroline Z. Hudson were duly opened to probate as vacant successions, and after due formalities and advertisement, Truman M. Causey was appointed curator for each succession, and on the 9th of September, 1936, in his capacity as such, instituted the two suits now before us for consideration.

On September 25, 1936, in each case, the defendant ruled plaintiff into court to show cause why the order filed authorizing the prosecution of the suit in forma pauperis should not be rescinded and annulled, and, at the same time, exceptions of vagueness and no cause and no right of action were filed.

The rule and exceptions were taken up and argued on October 1, and on November 30, 1936, the trial judge rendered judgment denying the relief prayed for under the rule, and the exceptions were overruled; whereupon a default was entered in each case. On December 10, 1936, the defendant having filed no answer, due to misunderstanding or inadvertence of its attorneys, the two suits were consolidated for confirmation of default upon motion of plaintiffs' counsel, and after the introduction of evidence, principally documentary, judgment was rendered in favor of plaintiffs, decreeing the respective vacant estates to be the owner of the property in controversy, and also annulling, setting aside and canceling

the two deeds to the property executed by the sheriff on June 30, 1881, and all subsequent mesne conveyances thereof, and awarding damages in the sum of $3,288, with legal interest and all costs of court.

The delay for a new trial and a suspensive appeal having elapsed, the defendant appealed devolutively from the judgment, and filed in this court a plea of prescription of three years, under article 233 of the Constitution of 1898 and 1913, and by section 11 of Article 10 of the Constitution of 1921, and also of ten and thirty years acquirendi causa under articles 3478 and 3499 of the Civil Code, respectively. They later filed, in support of the plea of prescription acquirendi causa, a motion supported by affidavits to show that all the taxes due on the property had been paid for the years 1894 to 1907, both inclusive, and that the defendant and their ancestors in title had been in actual physical possession of the properties from September 22, 1905, to the present time.

Counsel for appellant concedes, under the authority of the case of Beuhler v. Beuhler Realty Company, Inc., 155 La. 319, 99 So. 276, that one may prosecute a suit, under section 2 of Act No. 156 of 1912, as amended by Act No. 165 of 1934, in forma pauperis in his representative capacity, but they contend that in this case, under the allegations of the petition and the supporting affidavit of the third person, that it was Truman M. Causey individually—not the successions which he represents—who is declared to be the pauper. The pertinent part of the petition in each suit reads alike and is as follows:

"The petition of Truman M. Causey, * * * *the duly qualified curator of the vacant succession of* * * *

"*Petitioner* further represents that he is a citizen of this State and is unable, because of his poverty and lack of means to pay the present or future costs of this litigation, or to give bond for the payment of said costs. * * * *" (Italics ours.)

The affidavit of Truman M. Causey, which is annexed to each petition, recites: "That he appears herein as the duly qualified curator of the vacant succession, * * * *" and while it is true that the supporting affidavit executed by H. D. Smith recites that Truman M. Causey, because of his poverty and lack of finances or means was unable to pay the present or future costs, or to give bond therefor, nevertheless, on the trial of the rule to show cause filed by the defendant, the inventory of the assets of each succession—all in litigation—was filed and introduced in evidence and shows that the only property owned by each succession was the respective properties in controversy here. We are, therefore, of the opinion that the trial judge was justified in his ruling because the plaintiffs were in fact entitled to prosecute these suits in forma pauperis. The object and purpose of the act is to make it possible for those who are unable because of their poverty and want of means either to pay the costs of the case in advance, or as they may accrue, or to give bond for the payment of such costs, to litigate their claims in the courts of this state; and the requirement of the affidavit of the party invoking such rights and privileges, together with the affidavit

of a third person declaring that he knows the litigant claiming the privilege and his financial condition, and that he firmly believes the party unable to pay the costs, etc., is merely a safeguard for the protection of the courts from imposition.

█ We shall next consider the pleas of prescription of ten and thirty years filed in this court by the defendant. The Revised Civil Code, art. 3464, provides that "prescription may be pleaded in every stage of a cause, even on the appeal." "But prescription can not be pleaded in the Supreme Court, *unless the proof of it appear from documents exhibited or testimony taken in the inferior court.*" (Italics ours.) Article 3465, Rev.Civ.Code. See, also, articles 346 and 902 of the Code of Practice.

There is nothing in the record, except the affidavits filed in connection with the motion to remand filed in this court, to support the pleas of prescription either of ten years under articles 3474 and 3478, et seq. of the Revised Civil Code, or of thirty years under articles 3475 and 3499, et seq. of the Code, and therefore can not be considered by us here.

█ The exception of vagueness is leveled at the fact that the curator in each suit alleged as a basis for the damages claimed that defendant sold, from the two sections of land, 40 and 41, by instrument dated September 12, 1934, all the merchantable pine timber standing and down to' G. J. Deville Lumber Co., Inc., for the sum of $1,750, and by act dated June 4, 1936, all the trees, both pine and hardwood, growing, standing and down, to Southern Advance Bag & Paper Company, for the sum of $1,-

500, without showing what portion of the timber belonged to the respective estates, or the kind, quantity, and value of timber removed, if any, from each section; moreover, the total amount of the purchase price of the timber from both sections was claimed in each suit.

We do not think that the petitions contain a clear and concise statement of the object of the demand, or the cause of action on which it is founded, as required by the provisions of article 172 of the Code of Practice, in so far as the demand for damages is concerned. Defendant was entitled to be informed in each suit, by a clear and concise statement of the damages incurred, if any, by virtue of the alleged sales of the timber, by definite statements of the quantum and value of the timber cut and removed, or of such other damages as plaintiff may have suffered as the result thereof, and therefore, the exception of vagueness should have been sustained by the trial judge and the plaintiff ordered to amend his petition accordingly.

Having reached this conclusion, ordinarily it would be unnecessary to pass upon the exceptions of no cause or right of action, but the basis upon which these exceptions are predicated strikes at the very foundation of the suit and the relief sought under the exception of vagueness would in no way aid or support a cause or right of action if the exceptions of no right or cause of action are well founded.

Counsel for defendant in their brief do not treat the exceptions of no cause and no right of action as exceptions but on the merits. They contend that the record as

made up discloses: (1) That the plaintiff is without a right of action because each succession being more than *100* years old, there could be no debts and consequently no necessity for an administration of the estates; and as the only property inventoried was the property in controversy, which is alleged to be in the possession of defendant, the succession owned no property of which the curator could take possession; and (2) that plaintiff is without a cause of action for the reason that the plaintiff's petition fails to set forth a cause of action for annulling the sale of the property which defendant claims divested the title to the land in controversy in each suit. It is urged in oral argument and in their brief that on the face of the record it appears that plaintiff is suing to recover property which had been forfeited to the state for nonpayment of taxes and subsequently sold to the defendant's ancestors in title under Act No. 107 of 1880 and cannot be attacked because of the constitutional prescription of three years pleaded by the defendant, for it does not appear that there was a dual assessment or a prepayment of the taxes for which the properties were sold. Besides, they contend that the sheriff's deeds to Samuel Haas are prima facie valid, and the plaintiffs having failed to show or prove that the property was in fact never forfeited as was alleged in the petitions, the validity of the deeds should have been sustained.

The Revised Civil Code defines a succession as being vacant "when no one claims it, or *when all the heirs are unknown,* or when all the known heirs to it have renounced it," (article 1095) and article 1097 declares that "vacant successions are man-

aged by administrators appointed by courts, under the name of curators of vacant successions." (Italics ours.) Of course, there must be a succession to administer, but such may consist of any kind of property, whether movable or immovable, corporeal or incorporeal, tangible or intangible, or even a right or cause of action.

It, therefore, follows that the only requirement to open a vacant succession is to show that no one claims it, or that all the heirs are unknown, or that they have renounced it. Under the provisions of article 111 of the Code of Practice, "the curators of vacant successions * * * may bring all kinds of actions relating to their administration in their own name and in their quality, without being obliged to mention the name of the heirs they represent." See, also, Revised Civil Code, article 1155. We, therefore, conclude that plaintiff's petition clearly states a right of action.

As to whether plaintiff's petition states a cause of action, reference to the deeds in controversy attached to the petition shows that the property in each case was sold as being the property of the respective tax debtors (William Shields and Robert Rogers) "as per assessment roll of the State of Louisiana, of the year 1876; to satisfy a debt due said State for the unpaid taxes for the year 1876." In the deeds there also appears the declaration that said property was sold "by virtue of Act No. 107 of 1880, upon its second offering according to section 3 of said Act No. 107." The consideration in each sale was $1 and costs. Besides, there is the additional allegation in plaintiff's petition that the property was never sold or

forfeited to the state of Louisiana and therefore not subject to sale under the provisions of Act No. 107 of 1880.

It was held in the case of Waddill v. Walton, 42 La.Ann. 763, 7 So. 737, that "Act 107 of 1880 provides *exclusively* 'for the sale of all property forfeited or sold to the state for delinquent taxes or licenses;' and a tax-deed, made under said act, which describes the property sold as having been forfeited to the state at a particular date, and for taxes of a particular year, is null and void when it is proved that the property was never forfeited at the date, or for the taxes, stated." (Italics ours.)

This court had a case involving the identical issues as the one under consideration here in the case of Surget v. Newman, 42 La.Ann. 777, 7 So. 731, 732, decided in June, 1890, and the court remanded the case to ascertain if there had been, in fact, a forfeiture of the property in controversy to the state for nonpayment of the taxes assessed against it. In that case, like the case at bar, the defendant filed exceptions of no cause and no right of action and pleaded the prescription of three years under the then existing law, section 5 of Act No. 105 of 1874, comparable to articles 233 of the Constitutions of 1898 and 1913 and section 11 of article 10 of the Constitution of 1921. In that case the court said:

"At the date of this sale, May, 1881, there were only two statutes in force under the authority of which taxes prior to 1879 and those of 1880 could have been collected, and those were Acts *107* and *77* of *1880*.

"The latter is the general revenue law of that year, and by its terms the tax collector was restricted to making sale of 'the least quantity of said specific property of any debtor, which any bidder will buy for the amount of the taxes, interest, and costs due by said debtor.' It is obvious that the tax collector did not attempt to proceed under that statute.

"*The former statute* [107 of 1880] * * * *evidently relates only to the sale of property forfeited or sold to the state for delinquent taxes and licenses.* This appears from a casual examination of the title, as well as of the body of the act, and we have frequently so construed it. *It is equally obvious that a statute which directs and requires a tax collector to sell property forfeited or sold to the state only, does not confer upon that officer power or authority to sell property of a delinquent taxpayer in satisfaction of 'taxes due the state.'* [Brackets and italics ours.] * * *

"It is clear to our minds that in applying the bar of that 'statute to an action to invalidate the title to property purchased at tax-sale' it is our province and duty to see that the sale was made under and by virtue of some law of the state which authorized the proceedings, and our conclusion is that the title in question fails to disclose the existence of any statute authorizing such a sale, and therefore it cannot be said to be a title to property purchased at tax-sale, under and by virtue of any law of this state, and the prescription invoked and sustained by the judge a quo is not available to the defendant, and should have been rejected by him."

The above-quoted case was again before this court on appeal from the ruling of the district court after it was remanded (see 43

La.Ann. 873, 9 So. 561, 563), and the court commented as follows:

"As stated in the opinion remanding the case, if the sale was for delinquent taxes it was null and void, as Act 107 of 1880, the only act under which the sheriff and tax collector could make a sale, provides only for the sale of property forfeited to the state for the non-payment of taxes.

"*The question, then, is whether· or not there was ever any forfeiture of the property in controversy to the state for the non-payment of the taxes· assessed against it.*" (Italics ours.)

But counsel for defendant contend that this court held in a later decision in the case of Croom et al. v. Thompson's Heirs, 148 La. 771, 87 So. 742, that the prescription of three years provided for by articles 233 of the Constitutions of 1898 and 1913 applied to sales made under the provisions of Act No. 107 of 1880. A careful reading and thorough analysis of the opinion of the court in that case shows that the court did not so hold.

It appears to us that the petitions in both cases clearly state a cause of action. However, inasmuch as we have concluded that the exceptions of vagueness should have been sustained, and since the record does not affirmatively show that there was a forfeiture to the State as a basis for the sale under the provisions of Act No. 107 of 1880, the judgment of the lower court must, therefore, be reversed and set aside and the case remanded to the lower court for a new trial, allowing the defendant to file any necessary and proper pleadings or defenses except dilatory exceptions in each suit.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from is hereby annulled and set aside and both cases are hereby remanded to the lower court for further proceedings according to law and appellees to pay the costs of appeal, all other costs to await the final determination of the cases.

O'NIELL, C. J., concurs in the decree.

## On Rehearing.

PER CURIAM.

This suit was prosecuted in forma pauperis under the provisions of Act No. 156 of 1912, § 2, as amended by Act No. 165 of 1934, but through oversight in our decree we taxed the costs of appeal against the plaintiff-appellee, and we, therefore, correct the same so as to read as follows:

"For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is hereby annulled and set aside and both cases are hereby remanded to the lower court for further proceedings according to law, all costs to await the final determination of the cases."

Rehearing refused.

O'NIELL, C. J., is of the opinion that defendant's petition for a rehearing should be granted.