### RAYFORD v. ÆTNA INS. CO.
### No. 2052.

Court of Appeal of Louisiana. First Circuit.

Jan. 30, 1940.

Rehearing Denied March 4, 1940.

St. Clair Adams & Son, of New Orleans, for appellant.

Lewis & Lewis, of Opelousas, for appellee.

OTT, Judge.

The suit is to recover on a fire insurance policy for $500, plus 12 per cent penalty and $250 attorneys fees, interest and cost. The policy was issued on June 13, 1936, and covered a dwelling occupied by plaintiff and his wife at a place called Turkey Creek in Evangeline Parish, part of the insured building being used for the post office at that place, plaintiff's wife being the postmistress and he being assistant postmaster. The fire occurred after midnight on March 23, 1937, while both plaintiff and his wife were away from home.

The sole and only defense is that the policy was void because of the breach of a condition therein to the following effect:

"This entire policy * * * shall be void * * * if the interest of the insured be other than unconditional and sole ownership; or if the subject of the insurance be a building on ground not owned by the insured in fee simple."

It is alleged in the answer, and shown on the trial of the case, that the only title that the insured had to the property was a letter or contract from the Opelousas-St. Landry Securities Co., Inc. dated October 8, 1935, wherein the said company agreed to sell plaintiff eight acres of land at Turkey Creek. No deed was executed to the land, but the contract stipulated that pending the execution of the deed, plaintiff was to have the right to take possession of the land and to erect or move buildings thereon.

After plaintiff secured this agreement from Securities Company to sell him the land, he constructed the house on it, and he and his wife lived in the house and operated the post office in part of the building. No deed was ever made to plaintiff covering the land on which the house was situated, and while plaintiff did own the building covered by the insurance, he did not own the land on which the house was situated in fee simple. Therefore, unless the insurance company is prevented from setting up a breach of this provision in the policy as a defense because of Act No. 222 of 1928, the policy was voided by a breach of the condition therein requiring that the land on which the insured building is located be owned by the insured in fee simple. Campbell v. Richmond Ins. Company, 156 La. 455, 100 So. 679.

Act No. 222 of 1928 provides in substance that no policy of fire insurance shall be declared void by the insurer for the breach of any representation, warranty or condition contained in the policy, nor shall any such breach avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and shall be such a breach as would increase either the moral or physical hazard under the policy.

Where the insurance company desires to set up as a defense a breach of a condition or warranty in the policy, it not only must specially plead and prove the breach, but it must also allege and prove that such breach increased either the moral or physical hazard under the policy. Furthermore, the company must show facts and circumstances which caused the increase in the hazard by reason of the breach. Knowles v. Dixie Fire Ins. Co., 177 La. 941, 149 So. 528.

As facts and circumstances to show that the breach of the condition in the policy requiring the insured to be the unconditional owner of the land on which the insured building was located did increase the moral hazard at the time of the fire, defendant showed that the land on which the building was situated was in litigation between a man named Causey and the Opelousas-St. Landry Securities Co. Inc.; that

on December 10, 1936, three or four months before the fire, a judgment had been rendered in the district court by default in favor of Causey and against said Securities Company decreeing Causey to be the owner of the land which the Securities Company had agreed to sell to plaintiff and on which he had erected the building; that plaintiff himself was then in litigation with said Causey on account of some charge of trespass made by Causey against plaintiff; that plaintiff knew of this litigation between Causey and the Securities Company which had not terminated at the time of the fire in March, 1937; that at that time, under the judgment, neither the Securities Company nor its author in title was the owner of the land on which plaintiff had constructed the building; that this judgment decreeing Causey to be the owner of the land was in effect at the time of the fire, and the judgment was not reversed until May 24, 1937, when the Supreme Court remanded the case for a trial on the merits. Causey v. Opelousas-St. Landry Securities Co., 187 La. 659, 175 So. 448.

It was further shown that at the time of the fire, plaintiff was under sentence of eighteen months in a federal reformatory for the embezzlement of some postal funds while acting as assistant postmaster; that he began serving this sentence some three weeks before the fire; that the fire was strongly suspicious of incendiary origin (in fact plaintiff alleges in his petition that he cannot account for the origin of the fire except on the theory of incendiarism).

The trial judge rendered judgment in favor of plaintiff for the amount of the policy plus 12 per cent penalty, interest and $250 attorneys fees. The defendant has appealed.

It is well to state here that defendant does not claim that either plaintiff or his wife burned or caused to be burned the insured building, and there is no evidence to create even a suspicion that they did so. On the contrary, the evidence shows that if the fire was of incendiary origin, neither plaintiff nor his wife was involved in the arson, but if someone did set fire to the building it was some third person. However, the question is not whether the insured caused the destruction of the building, but the question is whether or not the breach in a condition of the policy increased the moral hazard at the time of the loss.

What is meant by an increase of the moral hazard is well stated in the case of Knowles v. Dixie Fire Ins. Co., supra, as follows [177 La. 941, 149 So. 531]:

"The term 'moral hazard' as used in the act and in the decisions relates to the pecuniary interest which the insured or some other person has either in protecting the property from loss by fire or destroying it. The moral hazard is least when the pecuniary interest of the insured in protecting it is greatest. It is greatest when his pecuniary interest is such that he might gain most by burning it. While the confession may be a sad commentary on human nature, yet it is a fact known to all that men's pecuniary interests do sometimes influence their conduct even to the extent of burning their own property in order to collect insurance policies."

If the fact that plaintiff had been sentenced to a federal reformatory for embezzling postal funds did actually increase the moral hazard—that is, by making him more likely to have the house burned because of his financial condition or because of lowering his social and business standing—there is nothing to show that the breach in the policy relative to the fee simple ownership of the land had anything whatever to do with this increase in the moral hazard. Indeed, the moral hazard created by this circumstance would have been increased as much (if it was increased) had plaintiff held an iron clad title to the land on which the building was situated. Unless it is shown that the breach in the policy caused the criminal act and imprisonment of plaintiff and brought about a financial stringency on his part so that his pecuniary interest in burning his building in order to collect the insurance was greatly increased thereby, there was no relation of the breach to the increased hazard flowing from this circumstance. Under the circumstance in which plaintiff found himself at the time of the fire because of his incarceration, he had no greater temptation to burn the building than he would have had if his ownership of the land had been in fee simple.

The only serious and pertinent fact which might have caused an increase in the moral hazard because of the breach in a condition of the policy was the fact that at the time of the fire the land on which the house was situated had been decreed to be—

long to another person other than the company from which plaintiff had a contract to sell him the land. As the situation stood then plaintiff might have reasonably expected to be forced to either move his house or lose it entirely, and thus suffer a pecuniary loss.

There is some question as to whether or not plaintiff was fully acquainted with all of Causey's claims to the land and the proceedings which the Securities Company had taken to evict him from part of the land. From his testimony and that of his wife, it may be inferred that they both knew that Causey was making a claim to the land and that there was a possibility of the Security Company not being able to make a good title to the land. With this knowledge, however, it does not appear that plaintiff ever had much fear but that eventually the title would be cleared up, and his confidence in the ability of the Securities Company to give him a good title seems never to have been seriously shaken.

His acts in recording his contract, in moving and constructing a house on the land worth a thousand dollars or more, and the fact that he already had credits for almost one half the purchase price of the land, indicate that he did not anticipate any serious trouble in finally getting a title to the land. We do not find much basis for the claim that at the time of the fire plaintiff had lost faith in the ability of the Securities Company to make him a good title to the land, but, even admitting that he had become apprehensive on this point because of the course that the pending litigation had taken, what did he have to lose in case he was evicted from the land?

The only loss that he would have sustained in case of eviction was the cost of moving the house. There was other land just across the road from this house onto which he could have moved it, and it is shown that this cost would have been small. The cost of building a house of this kind is shown to be more than $1,000, and it hardly seems reasonable to assume that plaintiff could have considered it to his pecuniary interest to burn a house worth one thousand dollars in order to collect half *that amount in insurance just because it might have cost him a small sum to move the house a short distance onto another piece of land belonging to his relatives.*

We think our conclusion is fully justified under Act No. 222 of 1928 as that act has been interpreted and applied by our courts in many cases, the most pertinent of these, in addition to the case already referred to, being those of Brough et ux. v. Presidential Fire & Marine Ins. Co., 189 La. 880, 181 So. 432 and Rickerfor v. Westchester Fire Ins. Co., La.App., 186 So. 109.

We think the attorneys fees of $250 are rather high compared to the amount involved. While there is no iron bound rule in fixing attorneys fees in cases of this kind, we know no precedent that would justify an award of 50 per cent. We think attorneys fees of $100 would be more in line with awards in similar cases. See Chambers v. North British & Mercantile Ins. Co. Ltd., La.App., 175 So. 95.

For the reasons assigned, it is ordered that the judgment be amended by reducing the attorneys fees from $250 to $100, and by allowing the penalty of 12 per cent on the amount of the loss, $500; that in all other respects, said judgment be affirmed; the appellee to pay the cost of the appeal, and appellant to pay all other costs.